IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

PUBLIC SERVICE COMPANY OF NEW MEXICO,

       Plaintiff,

v.                                Civ No. 11-487 LH/WDS

NATIONAL UNION FIRE INSURANCE CO.,
OF PITTSBURGH, PA, and RILEY INDUSTRIAL
SERVICES, INC.
          Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff Public Service Company of New Mexico's Motion to Remand (Doc. 16), filed July 6, 2011. The Court, having considered the motion, the briefs of the parties, and the applicable law, concludes that Defendant National Union Insurance Co. of Pittsburgh, PA has not established that Riley Industrial Services, Inc. was fraudulently joined by PNM in order to destroy diversity jurisdiction. Nevertheless, the Court defers ruling on the Motion to Remand pending additional briefing from the parties on the issue of proper party alignment.

**I. INTRODUCTION AND BACKGROUND**

This case was originally filed on May 6, 2011, in the Second Judicial District Court, Bernalillo County, State of New Mexico. Plaintiff is Public Service Company of New Mexico ("PNM"). Named as defendants are National Union Fire Insurance Company of Pittsburgh, PA ('National Union"), and Riley Industrial Services, Inc. ("Riley"). According to the Complaint, PNM seeks a declaratory judgment as to both National Union and Riley regarding the existence

of insurance coverage under a policy issued by National Union.

Under a services contract between PNM and Riley, Riley agreed to obtain insurance coverage for PNM.  Accordingly, a Certificate of Liability Insurance was issued to PNM, naming it as an additional insured on Riley's insurance policy with National Union.   Thereafter, Angie Manygoat, an employee of Riley, sued both PNM and Riley in the Second Judicial District Court, Bernalillo County, State of New Meixco, case number 10cv095 (hereinafter "Manygoat lawsuit"), for bodily injuries that she allegedly sustained while working for Riley at PNM's premises.  The Manygoat lawsuit settled on or about December 9, 2010.

During settlement negotiations, PNM and Riley entered into an agreement to arbitrate PNM's contractual indemnification claim against Riley for losses related to the Manygoat lawsuit, which is premised upon the services contract between the two parties.[1]  Additionally, PNM agreed to waive its bad faith claim against Riley but specifically reserved all claims that it had against National Union.

PNM initiated arbitration proceedings against Riley sometime before April 1, 2011, and the parties have represented to the Court that arbitration is ongoing.  It was shortly after initiating arbitration proceedings against Riley that PNM  filed the present insurance action against both National Union and Riley in state court.  In this action, PNM seeks a declaration of coverage from National Union and Riley in order to cover defense costs and the settlement payment that it made to resolve the Manygoat lawsuit.   In addition to the declaratory judgment action, PNM's complaint also asserts claims against National Union alone for Bad Faith, Breach of Contract,

---

[1] It is PNM's position that the services contract obligated Riley to provide contractual indemnification and/or additional insured coverage to PNM for the Manygoat lawsuit.  However, this dispute is currently being arbitrated and is not before the Court.

2

Violation of the New Mexico Claims Practices Act, and Violation of the New Mexico Unfair Practices Act.

National Union, which is a citizen of Pennsylvania, removed this matter to federal court asserting federal subject matter jurisdiction on the basis of diversity of citizenship.  In its Notice of Removal, National Union acknowledges that Riley, like PNM, is a citizen of New Mexico. However, it argues that PNM improperly and fraudulently joined Riley in an effort to prevent diversity jurisdiction.  Riley consented to removal but has not participated in the briefing on the instant Motion to Remand.[2]  PNM maintains that Riley is a proper party to the declaratory judgment action, that this Court lacks diversity jurisdiction and that the matter must be remanded to state court, and that PNM should be awarded costs, expenses, and attorney fees associated with moving to remand.

## II.  LEGAL STANDARD

An action is removable if the federal district court would have original jurisdiction over the matter.  28 U.S.C. § 1441(a).  It is the obligation of the removing party to establish the subject matter jurisdiction of this Court.  *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999).  There is a presumption against removal jurisdiction.  *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).  Both the requisite amount in controversy and the existence of diversity must be affirmatively established by a preponderance of the evidence on the face of either the complaint or the removal notice for purposes of diversity jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).  Diversity jurisdiction

---

[2] D.N.M.LR-Civ. 7.1 provides that "[t]he failure of a party to file and serve a response in opposition to a motion . . . constitutes consent to grant the motion."  Thus, Riley's position is somewhat inconsistent in that it has consented to removal of this action but also  effectively consented to its remand by not filing a response to PNM's Motion to Remand.

requires complete diversity in that no plaintiff be the citizen of the same state as any defendant.

*Gadlin v. Sybron Intern. Corp.*, 222 F.3d 797, 799 (10th Cir. 2000).

## III.  ANALYSIS

### A.  National Union's Fraudulent Joinder Claim

In its Motion to Remand, PNM contends that diversity of citizenship does not exist in this case, because one of the named defendants, Riley, is a citizen of the same state as PNM. National Union argues in its Notice of Removal, however, that Riley has been fraudulently joined in this action by PNM in an attempt to destroy diversity jursidiction.

Generally, whether a case is removable or not is determined by the original pleadings, and the statement of a cause of action against a resident defendant will normally be sufficient to prevent removal.  *See Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). However, upon specific allegations of fraudulent joinder, the Court may pierce the pleadings and consider the entire record, determining the basis of joinder by any means available.  *Id.*  "The joinder of a resident defendant against whom no cause of action is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  *Id.* (internal citation omitted).

A defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty.  *See Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999) (citing *McLeod v. Cities Service Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956)).  The burden of proof on the defendant claiming fraudulent joinder, here National Union, is significant.  *Id.* at 1147.  Indeed, in *Montano v. Allstate Indemnity Co.*, the Tenth Circuit described the defendant's burden to prove fraudulent joinder as follows:

> To prove their allegation of fraudulent joinder [removing parties] must

4

> demonstrate that there is *no possibility* that [plaintiff] would be able to
> establish a cause of action against [the joined party] in state court.  In
> evaluating fraudulent joinder claims, we must initially resolve all disputed
> questions of fact and all ambiguities in the controlling law in favor of the non-
> removing party.  We are then to determine whether that party has any
> possibility of recovery against the party whose joinder is questioned.

No. 99-2225, 211 F.3d 1278, 2000 WL 525592, *1 (10th Cir. Apr. 14, 2000) (unpublished

opinion) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)) (emphasis added).

The fraudulent joinder standard is "more exacting" than the standard under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  *Id.*  Under the fraudulent joinder analysis, a viable claim is

stated against a resident defendant so long as there is some factual fit between the plaintiff's

allegations and the pleaded theory of recovery.  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701

(5th Cir. 1999).  Remand is required if any one of the claims against the non-diverse defendant is

possibly viable.  *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983).

 Here, in addition to other claims it makes against National Union, PNM is seeking a

declaration of coverage against National Union and Riley for loss sustained as a result of the

underlying Manygoat lawsuit.  Plaintiff does not seek a judgement or finding with regard to

whether Riley owes a contractual indemnification obligation to PNM, having committed that

issue to arbitration.  However, PNM and Riley explicitly agreed to submit only the discrete issue

of contractual indemnification to arbitration, and PNM did not restrict itself from asserting a

declaratory judgment action against Riley, along with National Union, concerning the existence

of coverage.  (*See* Doc. 1, Ex. 2)

 In its Notice of Removal and in its Response to PNM's Motion to Remand, National

Union argues that PNM does not state a viable cause of action against Riley and that Riley is not

a proper party to the present insurance dispute.  In contrast, PNM insists that the declaratory

judgment implicates Riley's rights and liabilities under the policy, as well as under its service contract with PNM, and that under New Mexico declaratory judgment law Riley must be included as a party in the present action.

First, National Union takes the basic position that because there is no possibility that the declaratory judgment action will result in PNM being awarded damages to be paid by Riley, there is no cause of action against Riley, and Riley was fraudulently joined. However, a declaratory judgment action *is* a legitimate cause of action, even in the absence of a damages award from one party to another. Indeed, New Mexico's Declaratory Judgment Act, NMSA 1978, § 44-6-2, gives courts the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed." § 44-6-2. Thus, it is PNM's prerogative to seek relief in the form of an order outlining the rights and obligations emanating from the National Union policy issued to Riley, under which it claims additional insured status. The fact that Plaintiff seeks a declaration of coverage, rather than asserting a claim for money damages, does not establish a fraudulent joinder claim.

National Union also argues that PNM has failed to prove that Riley is a necessary party to the declaratory judgment action. However, PNM notes that determinations made with respect to coverage directly relate to whether Riley breached contractual obligations to procure appropriate insurance for PNM[3] and may affect issues to be addressed at arbitration. PNM has also suggested, upon its information and belief, that if PNM is treated as an additional insured on the policy, the claim would affect the loss record for Riley. Finally, and most significantly, a

---

[3] As it stands, PNM has not adequately asserted against Riley a separate alternative claim for breach of contract by failure to procure appropriate insurance, though it has included in its declaratory judgment count an assertion that Riley was contractually bound to procure such coverage. However, PNM has indicated its intention to file a motion to amend its complaint in order to incorporate the claim.

declaration regarding coverage implicates and affects the insurance proceeds available to satisfy

PNM's indemnification claim against Riley and the limits available on the policy.  Even

National Union explicitly admitted in its response brief that the current declaratory judgment

action and PNM's indemnification claim against Riley are "peripherally related" in that there is

potential interplay "*if* the arbitrators first find that Riley owes indemnification to PNM under the

PNM/Riley contract, and *if* this court then finds that National Union owes insurance coverage for

that liability." (Doc. 18, at 7.)

Under New Mexico statutory law, "when declaratory relief is sought, all persons shall be

made parties who have or claim any interest which would be affected by the declaration, and no

declaration shall prejudice the rights of persons not parties to the proceeding."  N.M. Stat. Ann.

1978 § 44-6-12 (1975).  Similarly, the Tenth Circuit has noted that "in an action for declaratory

judgment all persons interested in the declaration are 'necessary' parties."  *Harris v. Quionones*,

507 F.2d 533, 537 (10th Cir. 1974) (citing *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653 (10th

Cir. 1946)).  Further, under Rule 19 of the New Mexico Rules of Civil Procedure and the Federal

Rules of Civil Procedure,[4] a party's presence is essential, if "the person claims an interest

relating to the subject matter of the action and is so situated that the disposition of the action in

the person's absence may . . . as a practical matter impair or impede that person's ability to

protect the interest."  Fed. R. Civ. P. 19; Rule 1-019 NMRA.  Finally, New Mexico courts have

long held that parties to a contract, and parties whose interests will be affected by a judgment,

are necessary and indispensible.  *See, e.g., Springer Elec. Coop., Inc. v. City of Raton*, 99 N.M.

---

[4] Although a federal district court exercising diversity jurisdiction applies federal procedural law, *see Hanna v. Plumer,* 380 U.S. 460, 465 (1965), this matter was originally filed in state court, and it was therefore New Mexico procedural law that applied at the time that Riley was joined as a party to the action.  This distinction becomes unimportant, though, given that the applicable state and federal procedural rules are identical.

625, 630, 661 P.2d 1324, 1329 (1983) ("We have repeatedly held that an indispensable party is one whose interests will be necessarily affected by judgment in a particular case . . . Furthermore, we have long held that all parties to a contract are necessary and indispensable."); *Home Fire & Marine Ins. Co. v. Schultz*, 80 N.M. 517, 458 P.2d 592 (1969) (reversing a declaratory judgment in favor of an insurer because the insured was absent from the proceeding); *Gallegos v. Nevada Gen. Ins. Co*, 149 N.M. 364, 248 P.3d 912 (N.M. Ct. App. 2011) (determining that a third-party claimant under a policy was an indispensible party to an action for declaration of coverage)

As a party to the insurance contract, and particularly one that is affected by the coverage determination, the Court concludes that Riley is an entity with an interest that could be affected by the outcome and is therefore a proper and necessary party under New Mexico law. Consequently, National Union has failed to prove with particularity and certainty that no possibly viable claim for declaration of coverage properly includes Riley. To the contrary, the Court concludes that Riley is not fraudulently joined. However, as discussed hereinafter, it does not necessarily follow from this determination that Riley's presence in this matter destroys diversity jurisdiction.

**B.  Party Alignment**

Courts, in diversity actions, have a duty to scrutinize the interests of the parties to determine if their positions in the litigation conform to their real interests. *Farmers Alliance Mut. Ins. Cov. v. Jones*, 570F.2d 1384, 1387 (10th Cir. 1978). The parties' characterization in the pleadings of their interests is not definitive. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). Under New Mexico law, realignment is proper if the Court determines that no actual, substantial controversy exists between the relevant parties. *Price v. Wolford*, 608 F.3d

698 (10th Cir. 2010) (rejecting the primary purpose test for realignment in favor of the substantial conflict test).  Realignment can be used by courts to either destroy or preserve diversity jurisdiction.  *See Standard Oil Co. v. Perkins*, 347 F.2d 379 (1965) (realigning the parties based on their interests and preserving diversity jurisdiction).

As far as the Court can tell, the interests of PNM and Riley are aligned with respect to the declaratory judgment action, both parties presumably benefitting from a determination that coverage exists under the policy.  Though there certainly exist matters of controversy between PNM and Riley, including contractual indemnification, those matters are simply not at issue in the present litigation.[5]

Given the apparent lack of controversy between PNM and Riley regarding the coverage issue, the Court is inclined to realign Riley as a plaintiff, which would preserve diversity jurisdiction in this Court.  Notably, Riley denies that an actual controversy exists between PNM and itself concerning the declaratory judgment action and "states that any disputes between Riley and PNM will be determined at Arbitration."  (Doc. 7, at ¶ 40.)  At the same time, the Court notes that Riley, in its Answer to PNM's Complaint, denied without further explanation certain of PNM's assertions, including its assertion 1) that the "claim for declaratory relief arises out of an insurance coverage dispute relating to National Union's obligation to defend and indemnify PNM against the claims asserted in the Complaint," and 2) that the "claim for declaratory relief also arises out of a contractual dispute between PNM and Riley relating to Riley's obligation to

_____

[5] The Court acknowledges that there may be *potential* controversy between PNM and Riley with respect to an alternative breach of contract claim for failure to procure proper insurance, which PNM advises may be asserted against Riley in an amended complaint.  At present, however, such a claim has not been asserted, leaving the declaratory judgment action as the only cause of action in which Riley is an interested party.  *See Jones*, 570 F.2d at 1387 (noting that the court must examine the pleadings and facts in existence at the time the action was commenced to determine if there is a justiciable controversy between the relevant parties).  Moreover, such a potential claim would only be viable if the Court determined, presumably against the primary interest of both PNM and Riley, that coverage did not exist.

defend, indemnify and hold PNM harmless from and against the claims asserted in the Complaint." *Compare* (Doc. 7, at ¶ 35) *with* (Doc. 1, Ex. C, at ¶ ¶ 57, 58.)  Therefore, before realigning Riley as a plaintiff *sua sponte*, the Court will afford the parties an opportunity to submit additional briefing addressing the issue of proper party alignment and whether an actual, substantial controversy exists between PNM and Riley with respect to the present litigation.

## C.  PNM's Request for Costs, Expenses and Attorney Fees

PNM urges this Court, under 28 U.S.C. § 1447(c), to order National Union to pay its costs, expenses, and attorney fees associated with opposing the removal of this action and seeking remand. To this end, PNM argues that National Union lacked "an objectively reasonable basis" for seeking removal.  Although the Court concludes herein that Riley was not fraudulently joined as a party, it cannot say that National Union lacked any reasonable basis for attempting removal.  After all, the Court's inclination at present is to maintain diversity jurisdiction after realignment of Riley as a Plaintiff.  And, although National Union did not specifically request such a realignment, it certainly emphasized the absence of a "viable claim" against Riley, arguing that there is no possibility that PNM may "recover against" Riley in the declaratory judgment action.  In sum, there appears to be an objectively reasonable basis for removal and diversity jurisdiction, though it may be more properly accomplished through party realignment.

## III.  CONCLUSION

For all of these reasons, the Court concludes that National Union has failed to establish the fraudulent joinder of Riley, which is the basis for its removal of this action.  However, the Court will reserve ruling on PNM's Motion to Remand until the parties have had the opportunity to submit supplemental briefs concerning the proper party alignment in this matter.

**WHEREFORE, IT IS HEREBY ORDERED** that PNM's Motion to Remand (Doc. 16)

10

**is granted in part**, in that National Union has failed to establish the fraudulent joinder of Riley, and the Court otherwise defers ruling on the motion pending additional briefing from the parties;

**IT IS FURTHER ORDERED** that, within ten (10) days of the entry of this Memorandum Opinion and Order, the parties shall submit **simultaneous briefs**, no longer than ten (10) pages in length, addressing the issue of proper party alignment according to real interests in the instant matter.

**IT IS SO ORDERED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE