## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

PUBLIC SERVICE COMPANY OF NEW MEXICO,

    Plaintiff,

v.                                                CIV No. 11-487 LH/WDS

NATIONAL UNION FIRE INSURANCE CO.,
OF PITTSBURGH, PA, and RILEY INDUSTRIAL
SERVICES, INC.
        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Public Service Company of New Mexico's ("PNM's") Motion to Remand (Doc. 16), filed July 6, 2011.  The Court previously addressed this motion through its September 27, 2011 Memorandum Opinion and Order, which granted the motion in part, determining that Defendant National Union Insurance Co. of Pittsburgh, PA ("National Union") had failed to establish the fraudulent joinder of Defendant Riley Industrial Services, Inc. ("Riley").  (*See* Doc. 34.)  The Court determined that Riley was a proper party in the declaratory judgment action; however, it invited briefing from the parties on the issue of proper party alignment, noting that there appeared to be a lack of controversy between PNM, the sole plaintiff, and Riley, a named defendant, with regard to the insurance coverage determination.  Each of the parties, including Riley, has now submitted a brief addressing party alignment and diversity jurisdiction.  Both National Union and Riley favor realignment and the exercise of diversity jurisdiction, while PNM opposes realignment and seeks remand.  Having considered the parties' briefs and the applicable law, the Court now concludes

that an actual and substantial conflict *does* in fact exist between Riley and PNM, such that Riley should not be realigned as a plaintiff.  PNM's Motion to Remand is therefore **well-taken** and will now be **granted in full**.  Consequently, the case will be remanded to the Second Judicial District Court.

## I. DISCUSSION

National Union argues that Riley should be realigned with PNM because of Riley's interest in having the National Union insurance policy extend to PNM as an additional insured for liability arising from the tort claims of Angie Manygoat ("Manygoat") and PNM's defense thereof.  National Union contends that if additional insured coverage exists, which it disputes, Riley would benefit because PNM would be made whole in the present litigation and would not need to pursue Riley for contractual indemnification in arbitration.

Like National Union, Riley argues that realignment is appropriate, maintaining that "no actual controversy" exists between PNM and Riley.  Riley's position is that it would, like PNM, benefit from a determination that coverage exists under the National Union policy, particularly if PNM amends its Complaint to assert an alternative breach of contract to procure insurance claim against Riley.

PNM, on the other hand, argues that because realignment was not mentioned by National Union in its removal papers, the policy of narrow construction of diversity claims counsels declining the exercise of diversity jurisdiction through realignment.  Additionally, PNM maintains that actual and substantial controversies exist between Riley and PNM, such that realignment would be improper.

In support of its argument that realignment would offend the narrow construction of diversity claims, PNM refers the Court to a District of Alabama case, *Andalusia Enterprises, Inc.*

*v. Evanston*, 487 F. Supp. 2d 1290 (N.D. Ala. 2007).  In *Andalusia*, the court noted that party realignment was not referenced by any defendant, either in the removal papers or within the thirty-day period for removal, but was raised, instead, only after motions to remand were filed. *Id.* at 1295.  The failure to request party realignment before the expiration of the thirty-day period for removal "disincline[d] the court to realign."  *Id.*  According to the court in *Andalusia*, where realignment is required from the face of the complaint, a removing-defendant's failure to alert the court of such may be excused.  *Id.* at 1296.  In contrast, though, "where realignment is a matter for legitimate debate, it must be demanded either in the notice of removal or by amendment filed within thirty (30) days after the appearance of removability."  *Id.*

       The Court finds the reasoning of the *Andalusia* court largely unpersuasive as applied to the present matter.  Although National Union did not explicitly mention "party realignment" in its Notice of Removal, it did argue, in discussing its fraudulent joinder claim, that "PNM cannot establish a viable state law cause of action against Riley, so Riley's citizenship cannot be considered for diversity purposes."  (Doc. 1, at 2.)  More importantly, whether or not the parties alert the court to the potential for realignment in diversity actions, the court still maintains a duty to scrutinize the interests of the parties in order to determine if their positions in the litigation conform to their real interests.  *See Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F. 2d 1384, 1387 (10th Cir. 1978); *see also Andalusia,* 487 F. Supp. 2d at 1294-95 (acknowledging that another court in the same district, in *Earnest v. State Farm Casualty Co.*, 475 F. Supp. 2d 1113 (N.D. Ala. 2007),* had *sua sponte* realigned its parties in order to create diversity jurisdiction).  Moreover, in performing the duty of scrutinizing the interests of the parties, courts may exercise diversity jurisdiction through the realignment of parties.  *See, e.g.*, *Standard Oil Co. v. Perkins*, 347 F.2d 379 (9th Cir. 1965); *Jackson v. St. Paul Fire & Marine Insur. Co.*, 246 F. Supp. 2d 535 (S.D.

Miss. 2003); *Earnest*, 475 F. Supp. 2d 1113 (N.D. Ala. 2007).  Nevertheless, although the Court will not wholly adopt the reasoning or the holding of the court in *Andalusia*, it does bear in mind the general federal policy of narrowly construing diversity claims in evaluating proper party alignment here.

PNM identifies several issues over which it claims there is substantial conflict between itself and Riley that precludes realignment.  First, PNM claims that any sum that is declared owed to PNM under the National Union policy will deplete the limits available to Riley as a named insured.  Second, PNM argues that by asserting the independent negligence of PNM as a reason for denial of coverage, National Union placed PNM at odds with Riley.  Third, PNM observes that Riley, in its Answer to PNM's Complaint, denied allegations that a coverage determination will impact the obligations of PNM and Riley under the parties' services contract.  Finally, PNM notes that National Union is representing Riley in arbitration and that it has repeatedly asserted a work product privilege regarding discovery requests that concern communications between National Union and Riley.  Thus, PNM suggests that National Union is more aligned with National Union than PNM.  Because the Court concludes herein that the independent negligence of PNM *is* a matter of actual and substantial conflict between PNM and Riley, it is unnecessary for the Court to decide whether the alternative controversies asserted by PNM also constitute actual and substantial conflicts.

According to PNM's Complaint, National Union denied coverage to PNM in part because "[Manygoat's] complaint contains allegations of negligence that arise from the independent negligence of PNM."  (Doc. 1, Ex. 3, ¶ 23.)  In its own Complaint, PNM enumerates allegations from Manygoat's complaint, some of which can be characterized as allegations of negligence by PNM.  (*See id.* at ¶ 25.)  PNM asserts, however, that "[m]ost, if not all, of the allegations against

PNM involved responsibilities and liabilities which, under the Contract, Riley had agreed to assume." (*Id.*)  Riley's answer to this assertion by PNM is simply that "the [Manygoat] Complaint speaks for itself" but that "Riley denies any statements . . . that deviate from the Complaint." (Doc. 7, at ¶ 22.)

Because Riley faces a potential obligation to indemnify PNM – an issue which will be decided by an arbitrator – perhaps without the benefit of insurance coverage or proceeds, it is foreseeable, if not probable, that Riley will defend itself by asserting the independent negligence of PNM.  Although PNM's contractual indemnification claim is not part of the present litigation, the propriety of National Union's denial of coverage on the basis of PNM's independent negligence is very much at issue here.  Significantly, on the issue of whose negligence, whether it be that of PNM or Riley, caused or contributed to Manygoat's injuries, PNM and Riley are adverse parties.  Consequently, the Court concludes that even though PNM and Riley may be otherwise aligned with respect to the coverage determination, the independent negligence of PNM, a matter presented in PNM's Complaint, *is* a matter of actual and substantial conflict between PNM and Riley.  *See Jones*, 570 F.2d at 1386 (concluding that although the named insureds and the insurer both sought a determination that no coverage existed, an actual controversy still existed between the parties on a separate issue:  over whether the policy required the insurer to defend the named insureds).  Having found a matter of actual and substantial conflict between Riley and PNM, the Court concludes that Riley need not be realigned with PNM as a plaintiff.  *See Price v. Wolford*, 608 F.3d 698, 705 (10th Cir. 2010).  As a result, complete diversity of citizenship is lacking[1], and the Court is without jurisdiction to decide the present

---

[1] As discussed in this Court's September 27, 2011 Memorandum Opinion and Order, both PNM and Riley are citizens of New Mexico.  (*See* Doc. 34, at 3.)

matter.

## II.  CONCLUSION

For all of these reasons, the Court concludes that PNM's Motion to Remand (Doc. 16) is **well-taken** and is now hereby **granted in full**.  This matter must therefore be remanded to state court.

**IT IS THEREFORE ORDERED** that this case is **REMANDED** to the Second Judicial District Court for the State of New Mexico.

_____
SENIOR UNITED STATES DISTRICT JUDGE